# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SELMA DIVISION

| | |
|---|---|
| **ROCKHILL INSURANCE COMPANY,**     ) <br>     ) <br>     Plaintiff,     ) <br>     ) <br> VS.     ) <br>     ) <br>     ) <br> **SOUTHEASTERN CHEESE CORPORATION;**     ) <br> **BRUCE ALLEN, JR.; CHARLES ALLEN;**     ) <br> **SHERYL ALLEN; FLOYD BANKS; HATTIE**     ) <br> **BANKS; MAXIE BANKS; WALTER**     ) <br> **BENJAMIN, JR.; CARRIE BLACK; DIANN**     ) <br> **BRAXTON; CHARLES BROWN; BETTY**     ) <br> **CONNER; JESSICA GAMBLE; REBECCA**     ) <br> **GAMBLE; SUSIE MAE GAMBLE;**     ) <br> **DEMARIUS GRAY; EVON JOHNSON; JEFF**     ) <br> **JOHNSON; MARY JOHNSON; ROSA**     ) <br> **JOHNSON; LULA JONES; ROSIA JONES;**     ) <br> **IZETTA LEWIS; DONALD MINOR;**     ) <br> **ELIZABETH MINOR; LAUREN OWENS;**     ) <br> **CALLIE SANDERS; CATHERINE SMITH;**     ) <br> **ANNIE THREATT; DIANNE WELLS; ALEX**     ) <br> **JONES, JR.; WILLIAM M. BELCHER; J.**     ) <br> **HENRY SIMS; AND MATTHEW SIMS**     ) <br>     ) <br>     Defendants.     ) | **Case No: 1:18-CV-268** |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Rockhill Insurance Company ("Rockhill"), by and through its attorneys, files this Amended Complaint for Declaratory Judgment against Southeastern Cheese Corporation ("SEC"), Bruce Allen, Jr., Charles Allen, Sheryl Allen, Floyd Banks, Hattie Banks, Maxie Banks, Walter Benjamin, Jr., Carrie Black, Diann Braxton, Charles Brown, Betty Conner, Jessica Gamble, Rebecca Gamble, Susie Mae Gamble, Demarius Gray, Evon Johnson, Jeff Johnson, Mary Johnson, Rosa Johnson, Lula Jones, Rosia Jones, Izetta Lewis, Donald Minor, Elizabeth

Minor, Lauren Owens, Callie Sanders, Catherine Smith, Annie Threatt, Dianne Wells, Alex Jones, Jr., William M. Belcher, J. Henry Sims, and Matthew Sims showing the Court as follows:

## NATURE OF ACTION

1. Rockhill brings this action pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 for a declaration regarding the parties' rights and obligations under a Site Specific Pollution Legal Liability Policy No. ENVP012929-02 issued to SEC (the "Policy").[1] SEC seeks coverage under the Policy for three state court lawsuits filed against it arising out of its alleged improper discharge and/or disposal of wastewater materials (hereinafter collectively the "Underlying State Court Suits"). For the reasons set forth below, Rockhill seeks a declaration that it has no duty to defend or indemnify SEC in connection with the Underlying State Court Suits because (1) the Policy is void based upon material misrepresentations and omissions made by SEC in its policy applications[2] regarding the existence of prior pollution-related occurrences and claims; (2) said misrepresentations and omissions preclude coverage under the Policy; (3) the Underlying State Court Suits do not allege a covered POLLUTION CONDITION at, on, under or migrating from any SCHEDULED LOCATION; (4) the Underlying State Court Suits do not allege a POLLUTION CONDITION which first commenced on or after the intended RETROACTIVE DATE of March 2, 2015.

## THE PARTIES

2. Plaintiff, Rockhill, is an Arizona company with its principal place of business in Missouri.

---

[1] A true and correct copy of the Policy is attached hereto as **Exhibit 1**.

[2] True and correct copies of SEC's April 10, 2017 and February 10, 2016 policy applications are attached hereto as **Exhibits 2 and 3**, respectively.

3. Defendant, SEC, is an Alabama corporation with its principal place of business in Uniontown, Alabama. SEC's president and registered agent is, upon information and belief, John Patrick Rankin ("Rankin").

4. Defendants, Bruce Allen, Jr., Charles Allen, Sheryl Allen, Floyd Banks, Hattie Banks, Maxie Banks, Walter Benjamin, Jr., Carrie Black, Diann Braxton, Charles Brown, Betty Conner, Jessica Gamble, Rebecca Gamble, Susie Mae Gamble, Demarius Gray, Evon Johnson, Jeff Johnson, Mary Johnson, Rosa Johnson, Lula Jones, Rosia Jones, Izetta Lewis, Donald Minor, Elizabeth Minor, Lauren Owens, Callie Sanders, Catherine Smith, Annie Threatt, Dianne Wells, Alex Jones, Jr., William M. Belcher, J. Henry Sims, and Matthew Sims (collectively, the "Underlying State Court Plaintiffs") are, upon information and belief, all domiciled in either Perry or Marengo County, Alabama.

## JURISDICTION AND VENUE

5. Plaintiff and Defendants are citizens of different states. As more fully set out below, the matter in controversy exceeds $75,000, exclusive of interest, attorney's fees, and costs. Thus, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

6. This Court has jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration" pursuant to 29 U.S.C. §§ 2201 and 2202. An actual and ripe controversy has arisen between the parties regarding any coverage owed under the Policy.

7. A substantial part of the events, acts, and omissions giving rise to this controversy occurred in this judicial district. Thus, this Court is the proper venue pursuant to 28 U.S.C. § 1391.

**BACKGROUND**

8. SEC operates a cheese manufacturing plant located at 92 Washington Street in Uniontown, Alabama. SEC's cheese manufacturing process creates waste materials in the form of whey and other byproducts. Since at least the early 2000s, SEC has disposed of its waste materials in various manners, including wastewater treatment/processing and land-application.

9. When SEC applied for the Rockhill site-specific pollution Policy it disclosed a single "self-reported one time wastewater spill." As it turns out, SEC had a long history of material spills, violations, claims, and/or occurrences that could reasonably be expected to result in a claim under the Policy that SEC failed to disclose.

SEC's History of Wastewater Spills, Violations, Claims, and/or Occurrences

10. On or about May 18, 2010, the Alabama Department of Environmental Management ("ADEM") assessed SEC with a $120,000 civil penalty. The civil penalty was based on 170 wastewater discharge violations by SEC between February and June 2009.[3]

11. On or about June 11, 2010, ADEM notified SEC of an overflow of wastewater from SEC's lagoon system into Cottonwood Creek, which is a creek that flows adjacent to the Crosscreek Farm sprayfields that are utilized by SEC for land-application of its treated wastewater.[4] According to a later lawsuit filed by SEC against its engineers, SEC was forced to pay ADEM fines and remediation fees as a result of this spill.

12. On or about June 3, 2011, SEC's engineer, CFM Group, issued an investigation report required by the ADEM Administrative Order. The report detailed the history and causes

---

[3] *See* ADEM Administrative Order 10-112-WP, ¶ 5, attached hereto as **Exhibit 4**. The assessed civil penalty was subsequently reduced by ADEM to $35,000. The findings as to the discharge violations and other requirements of the Administrative Order do not appear to have been disturbed.

[4] SEC itself does not own the sprayfields that it utilizes for its land-application. The sprayfields are instead owned by Crosscreek Farm, LLC ("Crosscreek Farm"), which is not an insured. Upon information and belief, one of the co-owners of SEC owns Crosscreek Farm.

of SEC's various discharge violations and made several recommendations on how to improve SEC's wastewater treatment and disposal system to avoid future violations.

13. On or about June 5, 2015, ADEM filed an enforcement action against SEC in the Circuit Court of Marengo County in connection with SEC's improper discharge of wastewater into Cottonwood Creek. The enforcement action alleged that SEC violated Ala. Code § 22-22-9(i)(3), ADEM Amin. Code r. 335-6-6-.03(1), and ADEM Amin. Code r. 335-6-10.[5] SEC did not disclose the ADEM enforcement action or all of its alleged violations to Rockhill.

14. The ADEM enforcement action details at least two separate incidents of SEC's improper discharge of wastewater in violation of Alabama law.

15. The first incident occurred in or about July 2014. According to the ADEM enforcement action, approximately 50,000 gallons of treated SEC wastewater spilled into a storm drain which was then discharged into an unnamed tributary that flows into Cottonwood Creek. SEC reported this wastewater spill to ADEM on or about July 7, 2014. ADEM inspected Cottonwood Creek the following day and determined that adverse water quality impacts as a result of the spill. ADEM's site inspection report and results were provided to SEC c/o Rankin. This incident appears to have been the only violation disclosed to Rockhill by SEC, although the enforcement action arising out of the violation was not disclosed.

16. The second incident (or incidents) occurred in or about April 2015. According to the ADEM enforcement action, that same day, SEC notified ADEM of a discharge of SEC wastewater from the Crosscreek Farm sprayfields into the same unnamed tributary that flows into Cottonwood Creek. ADEM inspected Cottonwood Creek and determined that adverse water

---

[5] *See Alabama Department of Environmental Mgmt. v. Southeastern Cheese Corp.*, 48-cv-2015-900079, in the Circuit Court of Marengo County, Alabama, Complaint (State Doc. 2), attached hereto as **Exhibit 5**.

quality impacts as a result of the spill. ADEM's site inspection report and results were provided to SEC c/o Rankin. SEC did not disclose these incidents to Rockhill.

17.  After this second incident, SEC's attorney wrote ADEM in response to its request for additional information. Therein, SEC's attorney outlined "apparent design flaws" in SEC's sprayfield system that caused the improper discharge and SEC's plans to overhaul its sprayfield system. SEC did not disclose this response or the apparent design flaws to SEC.

18.  Shortly after the filing of the ADEM enforcement action, on or about July 28, 2015, SEC and ADEM entered into a Consent Decree under which SEC, among other things, consented to payment of a $20,000 civil penalty and a $30,000 donation, as well as certain remedial actions (such as the filing of updated nutrient management plans) to address its wastewater spills.[6] SEC did not disclose the Consent Degree or the civil penalty to Rockhill.

19.  In the months following the entry of the ADEM Consent Decree, SEC filed periodic notices of compliance with the Consent Decree, including its efforts to come into compliance with the required remedial action. SEC did not disclose these efforts to Rockhill.

20.  On or about December 24, 2015, Black Warrior Riverkeeper, Inc. ("Riverkeeper") sent a written demand letter to SEC c/o Rankin notifying SEC that Riverkeeper intended to file a Clean Water Act lawsuit in connection with the overflow of SEC wastewater from sprayfields into certain unnamed tributaries, and ultimately into Cottonwood Creek. The demand letter documented unpermitted wastewater discharges from sprayfields utilized by SEC in November and December of 2015 and asserted that SEC was in violation of the Clean Water Act thereby

---

[6] *See Alabama Department of Environmental Mgmt. v. Southeastern Cheese Corp.*, 48-cv-2015-900079, in the Circuit Court of Marengo County, Alabama, Consent Decree (State Doc. 15), attached hereto as **Exhibit 6**.

04521365.3                                6

subjecting SEC to penalties in the amount of $37,500 per violation.[7] SEC did not disclose the Riverkeeper demand letter or its threatened suit to Rockhill.

21. On or about February 25, 2016, Riverkeeper filed the previously threatened Clean Water Act lawsuit against SEC in the United States District Court for the Southern District of Alabama. The complaint was served on SEC c/o Rankin, as its president and registered agent. The Riverkeeper lawsuit asserted that "Uniontown residents and Riverkeeper members have long complained about the operations of [SEC], specifically problems with the spraying of wastewater, the ponding of waste and illegal discharges from the sprayfields where the plant disposes of its water" and alleged that SEC intentionally discharged wastewater into Cottonwood Creek in November and December of 2015.[8] SEC did not disclose the Riverkeeper lawsuit or the alleged violations and member complaints described therein to Rockhill.

22. On or about August 11, 2016, SEC filed its own malpractice lawsuit against its engineering company, CFM Group, asserting various claims arising out of CFM Group's flawed sprayfield system design.[9] SEC did not disclose this lawsuit or its claims based upon the flawed system design to Rockhill.

The Underlying State Court Suits

23. SEC tendered the Underlying State Court Suits to Rockhill under the Policy. All three arise out of SEC's alleged improper discharge and disposal of wastewater and its defective sprayfields.

---

[7] *See* Riverkeeper Letter dated December 24, 2015, attached hereto as **Exhibit 7**.

[8] *See Black Warrior Riverkeeper, Inc. v. Southeastern Cheese Corp.*, et al., Civil Action No 16-0083, United States District Court for the Southern District of Alabama, Complaint (Fed. Doc. 1), attached hereto as **Exhibit 8**.

[9] *See Southeastern Cheese Corp., et al. v. CFM Group, LLC, et al.*, 53-cv-2016-900043, in the Circuit Court of Perry County, Alabama, Complaint (State Court Doc. 2), attached hereto as **Exhibit 9**.

24. The first suit is *Esther Calhoun, et al. v. Southeastern Cheese Corp., et al.*, pending in the Circuit Court of Perry County, Alabama as Case No. 53-cv-2018-900006 (the "Calhoun Suit"). It was filed on February 16, 2018. It generally asserts claims against SEC arising out of SEC's alleged improper discharge and disposal of wastewater at the Crosscreek Farm sprayfields, which according to plaintiffs, "occurred on a periodic, but continuing, basis from time-to-time to the present since 2013."[10]

25. The second suit is *Alex Jones, Jr. v. Southeastern Cheese Corp., et al.*, pending in the Circuit Court of Marengo County, Alabama as Case No. 48-cv-2018-900043 (the "Jones Suit"). It was filed on April 10, 2018. It also generally asserts claims against SEC arising out of SEC's alleged improper discharge and disposal of wastewater at the Crosscreek Farm sprayfields and details the history of SEC's past spills and violations set forth above.[11]

26. The third suit is *William M. Belcher et al. v. Southeastern Cheese Corp., et al.*, pending in the Circuit Court of Marengo County, Alabama as Case No. 48-cv-900084 (the "Belcher Suit"). It was filed on July 23, 2018. It also generally asserts claims against SEC arising out of SEC's alleged improper discharge and disposal of wastewater at the Crosscreek Farm sprayfields and details the history of SEC's past spills and violations set forth above.[12]

The Rockhill Policy, Applications, and Coverage

27. The Rockhill Policy provides claims-made site specific pollution legal liability coverage for the April 23, 2017 to April 23, 2018 policy period.[13]

---

[10] *See* Calhoun Suit, Complaint, attached hereto as **Exhibit 10**.

[11] *See* Jones Suit, Complaint, attached hereto as **Exhibit 11**.

[12] *See* Belcher Suit, Complaint, attached hereto as **Exhibit 12**.

[13] The Calhoun Suit and Jones Suit were each filed within this policy period. The policy period was extended by endorsement until May 7, 2018, and the Belcher Suit was filed within this extended period.

28. Prior to the issuance of the Policy, on April 10, 2017, SEC completed and signed a Site Specific Pollution Liability Application (the "Policy Application" and together with the prior policy application, the "Policy Applications"). The Policy Applications were executed by Rankin, as president.[14]

29. In completing the Policy Applications on behalf of SEC, Rankin responded to a series of questions seeking material information regarding, among other things, prior discharge/release violations and prosecutions, pollution claims, and/or occurrences that may reasonably be expected to give rise to a claim under the Policy.

30. First, the Policy Application asked about any violations during the past five years regarding any standard or law relating to the release of a substance into sewers, rivers, air or onto land and any related prosecutions. SEC disclosed a single "self-reported one time wastewater spill" that did not lead to any prosecution:

> 18. Have you during the last five years received any violations regarding any standard or law relating to the Release of a substance from the location(s) into sewers, rivers, air or onto land?  ☒ Yes   ☐ No
> If yes, please provide details: __Self-reported one time wastewater spill__
>
> If yes, have you ever been prosecuted?   ☐ Yes   ☒ No

31. Second, the Policy Application asked SEC to describe any pollution claims which have occurred during the last five years. SEC stated that there were none:

> 19. Please describe any pollution claims which have occurred during the last five years, (if none, please state so):
> __N/A__

32. Third, the Policy Application asked whether SEC was aware of any circumstances which may reasonably be expected to give rise a claim under the Policy. SEC checked "no":

---

[14] *See* infra fn. 2.

04521365.3                                         9

> 20. At the time of signing this application are you aware of any circumstances which may reasonably be expected to give rise to a claim under this policy?   ☐ Yes   ☒ No
> If yes, please provide details:
> _____
> _____
> _____

33. The following affirmation and warranty appeared above Rankin's signature:

> **WARRANTY STATEMENT**
> The undersigned authorized officer of the applicant declares that the statements set forth herein are true. The undersigned authorized officer agrees that if the information supplied on the application changes between the date of the application and the effective date of the insurance, he/she (undersigned) will immediately notify the insurer of such changes, and the insurer may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance. Signing of this application does not bind the applicant or the insurer to complete the insurance.

34. Rankin and other RESPONSIBLE INSUREDS (as defined in the Policy) were aware of SEC's history of wastewater spills, violations, claims, occurrences, and flawed sprayfield system design that might reasonably be expected to give rise to a claim as outlined above at the time of completing the Policy Applications. Rankin, on behalf of SEC, did not disclose such matters to Rockhill or accurately complete the Policy Applications, however.

35. Rockill issued the Policy in reliance on the representations and statements in the Policy Applications.[15]

36. Policy Condition E. states that:

> E. Application
>    By acceptance of this Policy, the INSURED agrees that:
>    1. the statements in the application are the INSURED'S representations;
>    2. those representations shall be deemed material;
>    3. this policy is issued in reliance upon the truth of those representations;
>    4. this policy is void if those representations are false; and
>    5. this policy embodies all agreements existing between the INSURED and the Company relating to this insurance.

---

[15] *See* Exhibit 1, Policy, Insuring Agreement, (stating that Rockhill agrees to insure SEC "in reliance upon the statements contained in the [Policy] Application.").

      37.      Policy Exclusion A. states that:

IV. EXCLUSIONS

    This insurance Policy does not apply to:

    A.  Non-Disclosed Conditions

        CLEAN-UP COSTS, CLAIMS, or LEGAL EXPENSE arising from any POLLUTION CONDITION or any other material circumstances existing prior to the inception date of this Policy, or prior to such subsequent time that a Scheduled Location is endorsed to this Policy, and not disclosed in the application for this Policy, provided that any RESPONSIBLE INSURED knew or reasonably could have expected that such POLLUTION CONDITION or material circumstances could give rise to CLEAN-UP COSTS, CLAIM or LOSS under this Policy.

      38.      The Policy contains the following relevant definitions:

    D.  CLAIM means a written demand(s), notice(s) or assertion(s) of a legal right alleging liability or responsibility on the part of the INSURED seeking a remedy and shall include but not be limited to lawsuit(s), petition(s), order(s) or government and/or regulatory action(s), filed against the INSURED by a third party.

    E.  CLEAN-UP COSTS means necessary and reasonable expenses incurred as a result of a POLLUTION CONDITION to investigate, assess, remove, dispose of, abate, contain, treat, immobilize or neutralize a POLLUTION CONDITION, to the extent required by:

        1.  Federal, State, Local or Provincial Laws, Regulations or Statutes, or any subsequent amendments thereof, enacted to address a POLLUTION CONDITION, including any individual or entity acting under the authority thereof; or

        2.  A legally applicable state voluntary program governing the cleanup of a POLLUTION CONDITION.

…

    I.  LEGAL EXPENSE(S) means any legal costs, charges and expenses incurred in the investigation, adjustment or defense of any CLAIM for LOSS or CLEAN-UP COSTS, or in connection with the payment of any CLEAN-UP COSTS as applicable, and shall include any necessary expert fees paid to experts retained by defense counsel.

        LEGAL EXPENSE does not include the time and expense incurred by the INSURED in assisting in the investigation or resolution of a CLAIM or in connection with CLEAN-UP COSTS, including but not limited to the costs of the INSURED'S in-house counsel, salary charges of regular employees or officials of the INSURED, and fees and expenses of supervisory counsel retained by the INSURED.

    J.  LOSS means monetary judgment, award or settlement of compensatory damages arising out of BODILY INJURY or PROPERTY DAMAGE as a direct result of a POLLUTION CONDITION, as well as related punitive, exemplary or multiplied damages where insurance coverage is allowable by law.

…

    O.  POLLUTION CONDITION means the discharge, dispersal, release, seepage, migration, or escape of POLLUTANTS into or upon land, or structures thereupon, the atmosphere, or any watercourse or body of water including groundwater.

…

Q.  RESPONSIBLE INSURED means:

   1. Any officer, director, or partner of the INSURED;

   2. Any person(s) or entity(ies) authorized by the INSURED to act for or in place of The INSURED; or

   3. Any employee of the INSURED responsible for the environmental or health and safety affairs of the INSURED.

R.  RESTORATION COSTS means reasonable and necessary costs incurred by the INSURED to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during work performed in the course of incurring CLEAN-UP COSTS.

   However, these costs shall not exceed the actual cash value of such real or personal property immediately prior to incurring the CLEAN-UP COSTS or include costs associated with improvements or betterments. Actual cash value is defined as the cost to replace such real or personal property, immediately prior to incurring the CLEAN-UP COSTS, minus the accumulated depreciation of the real or personal property.

S.  RETROACTIVE DATE means the date specifically listed in the Declarations or any endorsement(s) attached to this policy as being applicable to a SCHEDULED LOCATION or SCHEDULED NON-OWNED LOCATION (if such coverage is added to the Policy by endorsement).

T.  SCHEDULED LOCATION means any location(s) listed as a SCHEDULED LOCATION in the Declarations or any endorsement(s) attached to the policy.

    39.   In addition to the misrepresentations and omissions in the Policy Applications, the Policy's applicable Pollution Legal Liability coverage (Coverage A) only covers "LOSS and related LEGAL EXPENSE directly resulting from a POLLUTION CONDITION at, on, under or migrating from any SCHEDULED LOCATION and which first commenced on or after the RETROACTIVE DATE, if any[.]"

    40.   The only SCHEDULED LOCATION in the site-specific Policy is SEC's manufacturing facility located at 92 Washington Street, Uniontown Alabama. The Crosscreek Farm sprayfields, however—which again are not owned by SEC—are not SCHEDULED LOCATIONS in the Policy, and the Policy contains no non-owned location endorsement.

    41.   The Underlying State Court Suits are based upon and arise out of SEC's alleged improper discharge and/or disposal of wastewater materials at the Crosscreek Farm sprayfields, not SEC's manufacturing facilities. Thus, to the extent the Underlying State Court Suits allege a covered POLLUTION CONDITION, there is no coverage for the Underlying State Court Suits because any such POLLUTION CONDITION was not "at, on, under or migrating from any SCHEDULED LOCATION" as required under the Policy.

42.     Also, the RETORACTIVE DATE on the first Rockhill policy was March 2, 2015, which, as is standard on new claims-made policies, coincided with the inception month/year of the first policy and the prior expiring coverage. The RETROACTIVE DATE on the subject Policy, however, was mistakenly moved back approximately 3 years to March 18, 2012, which predates the inception of the first policy. This mistake is significant because, as set forth above, to the extent the Underlying State Court Suits allege a covered POLLUTION CONDITION, such POLLUTION CONDITION plainly first commenced before the intended RETROACTIVE DATE, March 2, 2015, which would bar coverage.

43.     The RETROACTIVE DATE appears to have been moved back based upon a representation in the February 2016 renewal policy application email submission that the retroactive date was March 18, 2012 rather than March 2, 2015 as intended and listed in the first policy. Notably, the March 18, 2012 date coincides with Crosscreek Farm obtaining the Crosscreek Farm sprayfields that are the subject the Underlying State Court Suits. Based upon the misrepresentations and omissions in the Policy Applications outlined above, it appears that this may have been an attempt to avoid the impact of the March 2, 2015 RETROACTIVE DATE in the original policy and that was intended by Rockhill and SEC. SEC never provided Rockhill with any evidence of prior coverage, soil samples, or other necessary underwriting information that would have been required to potentially move back the RETROACTIVE DATE as was done. Further, there was no increased premium or other consideration paid by SEC for moving back the RETROACTIVE DATE, which would work to broaden the coverage considerably. To this end, either the Policy should be reformed to reflect the correct RETROACTIVE DATE of March 2, 2015, which would further preclude coverage for the Underlying State Court Suits

under the Policy, or the Policy should be found void for lack of meeting of the minds or mutual assent as to this material term or for failure of consideration.

The Rockhill Investigation and Reservation of Rights Defense

44. SEC tendered the Underlying State Court Suits to Rockhill under the Policy.

45. Rockhill agreed to defend SEC against the Underlying State Court Suits under a full and complete reservation of rights, including but not limited to, the right to continue its investigation into SEC's prior knowledge and material misrepresentations and omissions in the Policy Applications and the other coverage issues raised herein.

46. Discovery in this matter could disclose coverage defenses in addition to those set forth herein and Rockhill reserves the right to raise these additional defenses to the extent they are disclosed in discovery and/through its continuing investigation.

## COUNT I

### DECLARATORY JUDGMENT THAT POLICY IS VOID BASED ON MISREPRESENTATIONS AND OMISSIONS IN THE POLICY APPLICATIONS

47. Rockhill repeats and incorporates the allegations contained in all prior paragraphs of the Amended Complaint as though fully set forth herein.

48. The Policy Applications requested that SEC disclose relevant and material information about prior violations, prosecutions, pollution claims, and/or occurrences that might reasonably be expected to give rise to a claim.

49. In response, SEC disclosed only a "self-reported one time wastewater spill."

50. SEC's representations in the Policy Applications were not accurate in light of SEC's history of wastewater spills, violations, claims, and occurrences set forth herein.

51. SEC made misrepresentations and omissions in the Policy Applications.

52. Such misrepresentations and omissions were material to the risk of loss, and Rockhill would not have issued the Policy at all or on the same terms if it had known about SEC's history of wastewater spills, violations, claims and/or occurrences set forth herein.

53. As a result of SEC's misrepresentations and omissions, the Policy is void under its plain terms, and Rockhill is entitled to rescind the Policy under Alabama Code § 6-5-100, *et seq*. and/or Alabama Code § 27-14-7(a).

54. Rockhill is entitled to a judicial declaration stating that: (a) the Policy did not take effect due to the misrepresentations and omissions in the Policy Applications, and (b) the Policy is void as a result of the misrepresentations and omissions.

## COUNT II

### DECLARATORY JUDGMENT THAT NO COVERAGE EXISTS FOR THE CLAIM BASED ON MISREPRESENTATIONS AND OMISSIONS IN THE POLICY APPLICATIONS AND RELATED NON-DISCLOSED CONDITIONS

55. Rockhill repeats and incorporates the allegations contained in all prior paragraphs of the Amended Complaint as though fully set forth herein.

56. Rockhill's coverage obligations under the Policy are made "in reliance upon the statements contained in the [Policy] Application" and subject to all Policy conditions, which include SEC's agreement that the Policy "is issued in reliance upon the truth of [such] representations."

57. SEC's representations in the Policy Applications were not true in light of SEC's history of wastewater spills, violations, claims, occurrences and flawed sprayfield system design set forth herein.

58. The Policy itself further excludes "CLEAN-UP COSTS, CLAIMS, or LEGAL EXPENSE arising from any POLLUTION CONDITION or any other material circumstances existing prior to the inception of this Policy, … and not disclosed in the application for this

Policy, provided than any RESPONSIBLE INSURED knew or reasonably could have expected that such POLLUTION CONDITION or material circumstance could give rise to CLEAN-UP COSTS, CLAIM or LOSS under this Policy."

59.     Any POLLUTION CONDITION alleged in the Underlying State Court Suits and other material circumstances existed prior to the inception of the Policy and were not disclosed in the Policy Applications. Moreover, RESPONSIBLE INSUREDS, including Rankin, knew or reasonably could have expected that any such POLLUTION CONDITION or material circumstances could give rise to a CLEAN-UP COSTS, CLAIM or LOSS under the Policy.

60.     Thus, no coverage exists for the Underlying State Court Suits pursuant to the terms and conditions of the Policy and the Policy Applications.

61.     Because the Policy Applications were not true or accurate, there is no coverage under the Policy, and Rockhill is entitled to a judicial declaration that there is no coverage.

## COUNT III

### DECLARATORY JUDGMENT THAT NO COVERAGE EXISTS FOR THE CLAIM BECAUSE THE UNDERLYING STATE COURT SUITS DO NOT ALLEGE A POLLUTION CONDITION AT, ON, UNDER OR MIGRATING FROM ANY SCHEDULED LOCATION

62.     Rockhill repeats and incorporates the allegations contained in all prior paragraphs of the Amended Complaint as though fully set forth herein.

63.     The applicable Pollution Legal Liability coverage (Coverage A) only covers "LOSS and related LEGAL EXPENSE directly resulting from a POLLUTION CONDITION at, on, under or migrating from any SCHEDULED LOCATION and which first commenced on or after the RETROACTIVE DATE, if any[.]"

64.     The only SCHEDULED LOCATION in the site-specific Policy is SEC's manufacturing facility located at 92 Washington Street, Uniontown Alabama.

65. The Crosscreek Farm sprayfields are not SCHEDULED LOCATIONS in the Policy, and the Policy contains no non-owned location endorsement.

66. The Underlying State Court Suits are based upon and arise out of SEC's alleged improper discharge and/or disposal of wastewater materials at the Crosscreek Farm sprayfields, not SEC's manufacturing facilities.

67. Accordingly, to the extent the Underlying State Court Suits allege a covered POLLUTION CONDITION, there is no coverage for the Underlying State Court Suits because any such POLLUTION CONDITION was not "at, on, under or migrating from any SCHEDULED LOCATION" as required under the Policy.

## COUNT IV

**DECLARATORY JUDGMENT THAT NO COVERAGE EXISTS FOR THE CLAIM BECAUSE THE UNDERLYING STATE COURT SUITS DO NOT ALLEGE A POLLUTION CONDITION WHICH FIRST COMMENCED ON OR AFTER THE INTENDED RETROACTIVE DATE OF MARCH 2, 2015, OR ALTERNATIVELY, THAT THE POLICY IS VOID DUE TO A LACK OF MEETING OF THE MINDS**

68. Rockhill repeats and incorporates the allegations contained in all prior paragraphs of the Amended Complaint as though fully set forth herein.

69. Through a mutual mistake of the parties, or alternatively, a mistake of one party, which the other at the time knew or suspected, the Policy's March 18, 2012 RETROACTIVE DATE does not express the true intention of the parties.

70. Rockhill therefore requests that the Policy's RETROACTIVE DATE be reformed to March 18, 2012 as in the original policy and as was intended by the parties.

71. This reformation can be done without prejudice to the rights of any third-parties.

72. Coverage is precluded under the reformed RETROACTIVE DATE because any POLLUTION CONDITION alleged in the Underlying State Court Suits first commenced before March 2, 2015.

73. Alternatively, Rockhill requests that the Policy be declared void because there was no meeting of the minds or mutual assent between Rockhill and SEC as to the March 18, 2012 RETROACTIVE DATE, which was a material term of the Policy, or, at a minimum, that the March 18, 2012 RETROCATIVE DATE be voided for lack of consideration, either of which further precludes coverage for the Underlying State Court Suits.

## RELIEF REQUESTED

WHEREFORE, Rockhill respectfully asks for the following relief:

A. A declaration that the Policy is void and that Rockhill is entitled to rescind the Policy;

B. A declaration that there is no coverage under the Policy for the Underlying State Court Suits or any of the acts or omissions alleged against SEC therein for the reasons set forth herein;

C. Such other, further, or different relief to which Rockhill may be entitled.

Respectfully submitted this 26th day of October 2018.

        Respectfully submitted,

        */s/ Joshua B. Baker*
        Christopher Frost
        Joshua B. Baker
        Maynard, Cooper & Gale, P.C.
        1901 Sixth Avenue North, Suite 2400
        Birmingham, Alabama 35203

## **CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on October 26<u>th</u>, 2018, I have served a true and correct copy of the foregoing via e-mail.

Kirkland E. Reid
JONES WALKER LLP
11 N. Water Street, Suite 1200
Mobile, AL 36602
Phone (251) 432-1414
kreid@joneswalker.com

Michael D. Smith
SMITH & STAGGS, LLP
701 22nd Avenue Suite 1
Tuscaloosa, AL 35401
Phone (205) 409-3140
msmith@smithstaggs.com

Spencer M. Taylor
James L. Noles, Jr.
Mary E. Monroe
BARZE TAYLOR NOLES LOWTHER, LLC
2204 Lakeshore Drive, Suite 330
Birmingham, AL 35209
Phone (205) 872-1032
staylor@btnllaw.com
jnoles@btnllaw.com
*Attorneys for Southeastern Cheese Corporation*

Robert F. Prince
D. Blake Williams
PRINCE, GLOVER & HAYES
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406
Phone (205) 345-1234
rprince@princelaw.net
*Attorney for Multiple Defendants*

Erby J. Fischer, II
Victoria L. Dye
FISCHER & ASSOCIATES, LLC
2201 Providence Park, Suite 200
Birmingham, Alabama 35242
erby@falawgroup.com
victoria@falawgroup.com
*Attorneys for Alex Jones, Jr*

           */s/ Joshua B. Baker*
           OF COUNSEL