# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **ROCKHILL INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:18-cv-0268-KD-B |
| ) | |
| **SOUTHEASTERN CHEESE** ) | |
| **CORPORATION,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This action is before the Court on the Motion for Judgment on the Pleadings and Brief in Support filed by Plaintiff Rockhill Insurance Company (doc. 50), the Response filed by Defendant Southeastern Cheese Corporation (doc. 55), the Response filed by Defendants Alex Jones, William Belcher, J. Henry Sims, and Matthew Sims (doc. 56) and Rockhill's Reply (doc. 59). Upon consideration, and for the reasons set forth herein, the Motion is DENIED.

A. <u>Background</u>

This diversity action is brought pursuant to Federal Rules of Civil Procedure 57 and the Declaratory Judgment Act. 28 U.S.C. §§ 1332, 2201, 2202. Plaintiff seeks a declaration regarding the parties' rights and obligations under a Site Specific Pollution Legal Liability Policy (the Policy) issued to Defendant Southeastern Cheese Corporation (SEC).[1]

In the amended complaint, Plaintiff alleges that it provided SEC coverage for the April

---

[1] Except for SEC, Defendants do not dispute Plaintiff's allegation that it and Defendants are citizens of different states or the amount in controversy (doc. 36, ¶ 5; doc. 43, 44, 45, 46). However, SEC did not challenge the Court's jurisdiction in response to the motion for judgment on the pleadings.

23, 2017 to April 23, 2018 Policy period (doc. 36, ¶ 27). During this time, three lawsuits were filed in state court against SEC.[2] The state court plaintiffs generally allege improper discharge and disposal of wastewater at the Crosscreek Farm sprayfields, which are used by SEC for land-application of its treated wastewater. (Id., ¶ 24, 25, 26). SEC tendered the state court lawsuits to Plaintiff for coverage under the Policy (Id., ¶ 23).

Plaintiff moves for judgment on the pleadings <u>only</u> as to Count II wherein it alleges that no coverage for the state court lawsuits is available because the Policy Exclusion for non-disclosed conditions applies (doc. 36, ¶¶ 55-61). Specifically, as follows:

> IV. EXCLUSIONS
>
> This insurance Policy does not apply to:
>
> A. Non-Disclosed Conditions
>
> CLEAN-UP COSTS, CLAIMS or LEGAL EXPENSE arising from any POLLUTION CONDITION or any other material circumstances existing prior to the inception date of this Policy, or prior to such subsequent time that a Scheduled Location is endorsed to this Policy, and not disclosed in the application for this Policy, provided that any RESPONSIBLE INSURED knew or reasonably could have expected that such POLLUTION CONDITION or material circumstances could give rise to CLEAN-UP COSTS, CLAIM or LOSS under this Policy.

(Doc. 36, ¶ 37; doc. 36-1).

> As defined in the Policy,
>
> RESPONSIBLE INSURED means: 1. Any officer, director, or partner of the INSURED; 2. Any person(s) or entity(ies) authorized by the INSURED to act for or in place of the INSURED; or 3. Any employee of the INSURED responsible for the environmental or health and safety affairs of the INSURED.

---

[2] Details of the state court lawsuits are alleged in paragraphs 23 through 26 (doc. 36). SEC admits that the lawsuits were filed but denies the characterizations of the lawsuits (doc. 43, ¶¶ 23-26).

2

> POLLUTION CONDITION means the discharge, dispersal, release, seepage, migration, or escape of POLLUTANTS into or upon land, or structure thereupon, the atmosphere, or any watercourse or body of water including groundwater.

(Doc. 36, ¶ 38; doc. 36-1). Plaintiff did not plead a definition for the phrase "other material circumstances" (doc. 36).

Plaintiff alleges that SEC did not disclose in the 2017 Policy Application its "history of material spills, violations, claims, and/or occurrences that could reasonably be expected to result in a claim under the Policy…" (doc. 36, ¶ 9). Specifically, between May 18, 2010 and July 28, 2015, SEC was subject to an ADEM Enforcement Action and related consent decree; on December 24, 2015, SEC received a demand letter from Black Warrior Riverkeeper, Inc. and then sued on February 26, 2016 for violations of the Clean Water Act lawsuit; and on Aug 11, 2016 SEC filed a lawsuit against the engineering firm that designed its sprayfields, alleging that the design was flawed (doc. 36, ¶ 10-22).

Plaintiff alleges that "[p]rior to the issuance of the Policy, . . . SEC completed and signed a Site Specific Pollution Liability Application" which was executed by SEC's president as were the previous Policy Applications. (Id. ¶ 28). Plaintiff alleges that questions in the 2017 Applications and other Applications sought "material information regarding, among other things, prior discharge/release violations and prosecutions, pollution claims, and/or occurrences that may reasonably be expected to give rise to a claim under the Policy." (Id. ¶ 29). With respect to the 2017 Application, Plaintiff alleges as follows:

> 30. First, the Policy Application asked about any violations during the past five years regarding any standard or law relating to the release of a substance into sewers, rivers, air or onto land and any related prosecutions. SEC disclosed a single "self-reported one time wastewater spill" that did not lead to any prosecution:

> | 18. | Have you during the last five years received any violations regarding any standard or law relating to the Release of a substance from the location(s) into sewers, rivers, air or onto land? ☒ Yes ☐ No
> If yes, please provide details: _Self-reported one time wastewater spill_ |
> | --- | --- |
> | | If yes, have you ever been prosecuted? ☐ Yes ☒ No |

31. Second, the Policy Application asked SEC to describe any pollution claims which have occurred during the last five years. SEC stated that there were none:

> | 19. | Please describe any pollution claims which have occurred during the last five years, (if none, please state so):
> _N/A_ |
> | --- | --- |

32. Third, the Policy Application asked whether SEC was aware of any circumstances which may reasonably be expected to give rise a claim under the Policy. SEC checked "no":

> | 20. | At the time of signing this application are you aware of any circumstances which may reasonably be expected to give rise to a claim under this policy? ☐ Yes ☒ No
> If yes, please provide details: |
> | --- | --- |

(Doc. 36-2, ¶ 30-32). The Application contained a "Warranty Statement" wherein the president of SEC "declares that the statements set forth herein are true." (Id., ¶ 33).

Based on the above, Plaintiff alleges that:

34. Rankin and other RESPONSIBLE INSUREDS (as defined in the Policy) were aware of SEC's history of wastewater spills, violations, claims, occurrences, and flawed sprayfield system design that might reasonably be expected to give rise to a claim as outlined above at the time of completing the Policy Applications. Rankin, on behalf of SEC, did not disclose such matters to Rockhill or accurately complete the Policy Applications, however.

(Doc. 36, p. 10).

In Count II, Plaintiff seeks "declaratory judgment that no coverage exists for the claim based on misrepresentations and omissions in the policy application and related non-disclosed conditions" (Id., p. 15). Plaintiff alleges as follows:

> 56. Rockhill's coverage obligations under the Policy are made "in reliance upon the statements contained in the [Policy] Application" and subject to all Policy conditions, which include SEC's agreement that the Policy "is issued in reliance upon the truth of [such] representations."
>
> 57. SEC's representations in the Policy Applications were not true in light of SEC's history of wastewater spills, violations, claims, occurrences and flawed sprayfield system design set forth herein.
>
> 58. The Policy itself further excludes "CLEAN-UP COSTS, CLAIMS, or LEGAL EXPENSE arising from any POLLUTION CONDITION or any other material circumstances existing prior to the inception of this Policy, … and not disclosed in the application for this Policy, provided than any RESPONSIBLE INSURED knew or reasonably could have expected that such POLLUTION CONDITION or material circumstance could give rise to CLEAN-UP COSTS, CLAIM or LOSS under this Policy."
>
> 59. Any POLLUTION CONDITION alleged in the Underlying State Court Suits and other material circumstances existed prior to the inception of the Policy and were not disclosed in the Policy Applications. Moreover, RESPONSIBLE INSUREDS, including Rankin [SEC's president], knew or reasonably could have expected that any such POLLUTION CONDITION or material circumstances could give rise to a CLEAN-UP COSTS, CLAIMS or LOSS under the Policy.
>
> 60. Thus, no coverage exists for the Underlying State Court Suits pursuant to the terms and conditions of the Policy and the Policy Applications.
>
> 61. Because the Policy Applications were not true or accurate, there is no coverage under the Policy, and Rockhill is entitled to a judicial declaration that there is no coverage.

(Doc. 36, p. 15-16).

### A. <u>Statement of the law</u>

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are

5

closed--but early enough not to delay trial--a party may move for judgment on the pleadings." The pleadings are closed for purposes of Rule 12(c), "when a complaint and answer have been filed." *Lillian B. ex rel. Brown v. Gwinnett Cty. Sch. Dist.*, 631 Fed. Appx. 851, 853 (11th Cir. 2015). A Rule 12(c) motion "provides 'a means of disposing of cases when ... a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings....'" *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed.2004)0 (emphasis in original).

In "determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335. Thus, the Court must accept as true the material facts alleged by SEC and the other Defendants in their answers, and view those in the light most favorable to them. "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.* When the Rule 12(c) motion "is filed by the plaintiff, a critical question is whether the defendants' answer raises issues of fact that would defeat the plaintiff's recovery." *Volvo Financial Services v. JRD Contracting, Inc.,* 2017 WL 8941065, *3 (S.D. Ala. July 7, 2017) (citing *Gerlinger v. Amazon.Com, Inc.,* 311 F. Supp.2d 838, 843 (N.D. Cal. 2004) ("A plaintiff is not entitled to judgment on the pleadings if the defendant's answer raises issues of fact or an affirmative defense, which, if proved, would defeat plaintiff's recovery.")).

Generally, the Court may not consider matters outside the pleadings without converting the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d). However, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Also, the Court may consider documents attached to an answer if they are "(1)
6

central to the Plaintiff's claim; and (2) undisputed, which "in this context means that the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

C. <u>Analysis</u>

Plaintiff now moves for judgment on the pleadings with respect to Count II. Plaintiff argues that the elements for exclusion of coverage for a non-disclosed "pollution conditions" or "material circumstances" are met on the face of the amended complaint and the Defendants' answers. Excluded from coverage are (1) lawsuits; (2) that arise from POLLUTION CONDITIONS and material circumstances; (3) which were not disclosed in the application; (4) that SEC's president knew about; and (5) that a reasonable person in his position could have expected could give rise to a lawsuit and/or expenses to correct and remove the POLLUTION CONDITION. (Doc. 50, p. 11).

Plaintiff asserts that the three state court lawsuits arise from a "pollution condition" (i.e., SEC's operation of a flawed sprayfield system to dispose of wastewater), that was not disclosed on the 2017 Policy Application. Plaintiff argues that SEC knew about this "pollution condition" as well as "other material circumstances" (i.e., the ADEM Enforcement Action and the Riverkeeper lawsuit also based on SEC's operation of the flawed sprayfield system) and that its president, with that knowledge, knew or reasonably could have expected that they could give rise to lawsuits that result in a claim, loss or expense as defined in the Policy Exclusion. Plaintiff argues that the Non-Disclosed Condition Exclusion applies to bar coverage for the state court lawsuits and it is entitled to judgment on the pleadings (doc. 50, p. 11).

The Court has compared the allegations in Plaintiff's amended complaint with the Defendants' answers and defenses, more specifically SEC's answers and defenses. Accepting as

true the material facts alleged in the Defendants' answers and viewing those facts in the light most favorable to them, there are material disputes of fact that preclude judgment on the pleadings for Plaintiff. Material disputes of fact exist as to whether SEC failed to disclose a "pollution condition" or "other material circumstance" that it knew or reasonably could have expected could give rise to the state court lawsuits.

Rule 8(b) of the Federal Rules of Civil Procedure captioned "Defenses, Admissions and Denials", states that "[i]n responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1). Thus, for SEC's denials and defenses to be well-pleaded, it need not set out extensive details. Plaintiff argues that Defendants' answers are general and conclusory denials that are not well pleaded and therefore, need not be taken as true. The Court acknowledges that Defendants Belcher, Sims, Sims, Jones, and the remaining individual Defendants generally deny the allegations regarding the policy application process and the alleged non-disclosure, stating that they were without "sufficient information" or "sufficient knowledge" to admit or deny (docs. 44, 45, 46). However, SEC's answers are not conclusory denials. Instead, SEC's answers allege sufficient facts which if proved to be true, "would defeat the plaintiff's recovery." *Volvo Financial Services*, 2017 WL 8941065, *3; *Nationwide Property & Casualty Ins. Co. v. Polk*, 2015 WL 6442290, at *2 (S.D. Miss. Oct. 23, 2015). ("The Court construes the pleadings in the light most favorable to the non-moving party, accepting all well-pleaded facts as true, and asks whether Defendants in this case would be able 'to prevail under any set of facts or any possible theory that could be proven consistent with its denials in the Answer and the affirmative defenses therein.'") (quoting *Sexton–Walker v. Allstate Ins. Co.*, 2010 WL 5441994, *1 (N.D. Miss. Dec. 28, 2010)).

Plaintiff relies upon SEC's answers to three questions on the 2017 Application. However, the questions did not specifically ask SEC to disclose a "pollution condition or any other material circumstances." Since Plaintiff did not ask the question, it asks the Court to interpret SEC's answers and conclude on the allegations in the amended complaint that SEC failed to disclose and therefore, the Exclusion applies.

SEC answered "yes" to Question 18 which asked: "Have you during the last five years received any violations regarding any standard or law relating to the Release of a substance from the locations(s) into sewers, rivers air or onto land?" (doc. 36-2). SEC explained that a violation was received for a "one time self-reported spill" (doc. 36-2).

Now, Plaintiff alleges as follows:

> 30. First, the Policy Application asked about any violations during the past five years regarding any standard or law relating to the release of a substance into sewers, rivers, air or onto land and any related prosecutions. SEC disclosed a single "self-reported one time wastewater spill" that did not lead to any prosecution[.]

(Doc. 36, ¶ 30).

SEC answers:

> In response to Paragraph 30, SEC admits that Rockhill has extracted a portion of SEC's completed April 10, 2017 Site Specific Pollution Liability Application, but denies Rockhill's characterization of the application and SEC's responses. SEC further denies Paragraph 30 to the extent it alleges that the information in Paragraph 30 is all of the information SEC disclosed. Rockhill omits other information disclosed by SEC in its prior applications and otherwise. SEC accurately answered the applications' questions to the best of its understanding and ability. Except as expressly admitted herein, the remaining allegations of Paragraph 30 are denied.

(Doc. 43, ¶ 30).

SEC answered "N/A" to Question 19 which asked: "Please describe any pollution claims

which have occurred during the last five years" (doc. 36-2). Now, Plaintiff alleges as follows:

> 31. Second, the Policy Application asked SEC to describe any pollution claims which have occurred during the last five years. SEC stated that there were none[.]

(Doc. 36, ¶ 31).

> SEC answers:
>
> 31. In response to Paragraph 31, SEC admits that Rockhill has extracted a portion of SEC's completed April 10, 2017 Site Specific Pollution Liability Application, but denies Rockhill's characterization of the application and SEC's responses. SEC accurately answered the applications' questions to the best of its understanding and ability. Except as expressly admitted herein, the remaining allegations of Paragraph 31 are denied.

(Doc. 43, ¶ 31).

SEC answered "No" to Question 20 which asked SEC whether "[a]t the time of signing this application are you aware of any circumstances which may reasonably be expected to give rise to a claim under this policy?" (doc. 36-2, ¶ 32). Now, Plaintiff alleges as follows:

> 32. Third, the Policy Application asked whether SEC was aware of any circumstances which may reasonably be expected to give rise a claim under the Policy. SEC checked "no"[.]

(Doc. 36, ¶ 32).

> SEC answers:
>
> 32. In response to Paragraph 32, SEC admits that Rockhill has extracted a portion of SEC's completed April 10, 2017 Site Specific Pollution Liability Application, but denies Rockhill's characterization of its application and SEC's responses. SEC accurately answered the applications' questions to the best of its understanding and ability. At the time of signing the application, SEC was aware of no circumstances that it reasonably expected would give rise to a claim under the Rockhill policies. Except as expressly admitted herein, the remaining allegations of Paragraph 32 are denied.

(Doc. 43, ¶ 32).

Plaintiff also alleges that

> 9. When SEC applied for the Rockhill site-specific pollution Policy it disclosed a single "self-reported one time wastewater spill." As it turns out, SEC had a long history of material spills, violations, claims, and/or occurrences that could reasonably be expected to result in a claim under the Policy that SEC failed to disclose.

(Doc. 36, ¶ 9).[3]

In response, SEC answers:

> 9. SEC admits that it described a "self-reported one time wastewater spill" in its April 10, 2017 insurance application, but otherwise denies the allegations in the first sentence of Paragraph 9 as incomplete. Rockhill incompletely describes SEC's application for insurance and fails to describe all of the information disclosed by SEC in applying for insurance, including, but not limited to, SEC's earlier applications for insurance in 2015 and 2016. SEC denies the remaining allegations of Paragraph 9.

(Doc. 43, ¶ 9).[4]

Plaintiff also alleges that SEC's president

> and other "responsible insureds … were aware of SEC's history of wastewater spills, violations, claims, occurrences, and flawed sprayfield system design that might reasonably be expected to give rise to a claim as outlined above at the time of completing the Policy Applications. Rankin, behalf of SEC, did not disclose

---

[3] Paragraph 10-22 set out more detail regarding the history of wastewater spills, violations, claims or occurrences (doc. 36, p. 4-7)

[4] More information regarding past violations had been provided in the 2015 and 2016 Application. SEC's answer to Question 18 in the 2015 Application disclosed "1) water out of spec (sic) going to city lagoon, 2) rainwater containment pond spilled into creek" (doc. 55-1). SEC's answer to Question 18 in the 2016 Application disclosed a "self-reported a one time wastewater spill into a storm drain" (doc. 36-3). Additionally, in all Applications, SEC disclosed that it used a sprayfield system to dispose of wastewater from its cheese production. In 2017, SEC described its operations as "a) cheese manufacturing, b) wastewater treatment through series of lagoons (cells) and irrigation of treated water" and with respect to "past storage and disposal practices" SEC disclosed a) milk silos and cheese cold-storage – warehouse (dry products) b) lagoon ponds – store wastewater, sprayfield distributes water for absorption and evaporation." (doc. 36-2).

11

such matters to Rockhill or accurately complete the Policy Applications, however. (Doc. 36, ¶ 34).

SEC could have disclosed more in its answers to the questions on the 2017 Application. The extent the ADEM Enforcement Action was based on more than one spill should have been disclosed in response to Question 18 regarding past "violations". The Riverkeeper lawsuit should have been disclosed in response to Question 19 regarding "any pollution claims". The lawsuit against the engineering firm alleging defective design of the sprayfields, as well as the above, could have been disclosed in response to Question 20 regarding awareness of "any circumstances which may reasonably be expected to give rise to a claim?"

SEC admits that its applications did not reference the ADEM Enforcement Action, Riverkeeper lawsuit, and lawsuit against the engineering firm. However, SEC answers that other information about the sprayfields and release of wastewater into Cottonwood Creek was disclosed in its prior applications and denies Plaintiff's characterization of the questions on the applications as seeking material information regarding prior events "that may reasonably be expected to give rise to a claim under the Policy". (Doc. 43, ¶¶ 15-22).

Overall and importantly, SEC did not admit all the allegations necessary for the Exclusion to apply. *See FNB Bank v. Park National Corp.*, 2013 WL 5781280, at *1 (S.D. Ala. Oct. 25, 2013) ("The threshold problem with the plaintiff's position is that the defendants did not in fact admit all the allegations of the listed paragraphs.") The Policy Exclusion contains a limiting provision. The Exclusion applies "provided that" SEC's president or any "responsible insured knew or reasonably could have expected that such pollution condition or material circumstances could give rise to clean-up costs, claim or loss under this Policy" (doc. 36, p. 11).

As previously stated in paragraph 29, Plaintiff alleges that "[i]n completing the Policy Applications on behalf of SEC, Rankin responded to a series of questions seeking material information regarding, among other things, prior discharge/release violations and prosecutions, pollution claims, and/or occurrences *that may reasonably be expected to give rise to a claim under the Policy.*" (Doc. 36, ¶ 29) (italics added). Defendant "SEC admits to completing policy applications, but denies Rockhill's characterizations and description of the applications and denies that Rockhill has attached all of SEC's insurance applications to its Amended Complaint. Rockhill's characterizations and descriptions of the policy applications are erroneous and incomplete." (doc. 43, ¶ 29). And SEC answers that it "accurately answered the applications' questions to the best of its understanding and ability. At the time of signing the application, SEC was aware of no circumstances that it reasonably expected would give rise to a claim under the Rockhill policies." (doc. 43, ¶ 32).

Plaintiff also alleges that SEC's president and other responsible insureds were "aware of SEC's history . . . *that might reasonably be expected to give rise to a claim* . . . at the time of completing the Policy Applications' and that "Rankin, on behalf of SEC, did not disclose such matters to Rockhill or accurately complete the Policy Applications[.]" (doc. 36, ¶ 34) (italics added). SEC denies this allegation (doc. 43, ¶ 34).

Additionally, Plaintiff argues that certain allegations in SEC's complaint[5] against the engineering firm that designed the sprayfields, contradict SEC's answers, denials and defenses and show that it knew or reasonably could have expected that the sprayfields could give rise to a claim. Specifically, Plaintiff points out SEC's allegations that

---

[5] SEC's complaint is attached as Exhibit 9 to the amended complaint (doc. 36-9). Under the Federal Rules of Civil Procedure, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

> The actions of the Defendants have caused the Plaintiff to be in noncompliance with ADEM permits issued for the disposal of waste water effluent, exposing the Plaintiff to increasing fines, legal fees, engineering reports, amendments to the nutrient management plan, multiple university studies and consent orders;
>
> Has exposed the Plaintiff to additional lawsuits by environmental groups for the contamination of surrounding properties and streams;
>
> Will require the Plaintiff to expend additional sums of money, including millions of dollars, to redesign and/or relocate the plant and its waste water disposal system.

(doc. 50, p. 15, doc. 36-9, ¶44). Plaintiff argues that SEC's "knowledge easily satisfies the requirements of the exclusion" and that a reasonable person with this knowledge would have expected the flawed sprayfield to give rise to additional lawsuits (doc. 50, p. 16).

In response, SEC argues that Plaintiff "asks this Court to award judgment on its Amended Complaint and make the unsubstantiated leap that SEC as a matter of law reasonably should have expected" the state court lawsuits "to be filed against it" and to "make this leap" when the ADEM Enforcement Action and the Riverkeeper lawsuit were both "resolved before submission of the 2017 application" (doc. 56, p. 12).[6]

Plaintiff relies upon *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007), which states that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." The Eleventh Circuit has explained that the "*Griffin* principle applies if the exhibits 'plainly show' that the [answer's] allegations are untrue by providing 'specific factual details' that 'foreclose recovery as a matter of law.'" *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1245 (11th Cir. 2016) (quoting *Griffin*, 496 F. 3d at 1205–06).

---

[6] The ADEM Enforcment Action was resolved by Consent Decree in 2015. The Riverkeeper lawsuit was dismissed in February 2017. The Application was completed in April 2017.

SEC's complaint against the engineering firm alleges, <u>in the past tense</u>, that it had been subject to an ADEM Enforcement Action, that it had been sued by an environmental group, and it may have to expend funds to redesign or relocate the plant and its waste water disposal system. These allegations do not provide "specific factual details" to contradict SEC's admissions, denials, and defenses with respect to the state court lawsuits. Thus, a material dispute of fact exists as to whether this element of the Exclusion is met. *See FNB Bank*, 2013 WL 5781280, at *1 ("The more fundamental problem is that the only paragraph expressly accusing the defendants of breaching the Agreement is paragraph 73, and the defendants expressly deny the allegations of paragraph 73. . . . Because the Court is required to treat the defendants' denial of a breach as true and the plaintiff's allegation of a breach as false, the plaintiff cannot obtain judgment on the pleadings as to any breach of contract.").

SEC also raises other defenses. Specifically, that "Rockhill's claims are barred by the doctrine of estoppel", "barred by its lack of reasonable diligence and thoroughness to follow up or inquire further as to matters described in the policy applications", and that the "application uses undefined terms, is vague and ambiguous, and must be strictly construed against Rockhill." (Id., Eighth - Tenth Defenses).

D. Conclusion

Upon consideration of the motion, response, reply and exhibits, and for the reasons set forth herein, Plaintiff's motion for judgment on the pleadings as to Count II is denied.

DONE and ORDERED this 22nd day of April 2019.

<u>s / Kristi K DuBose</u>
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGED**